IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEFF ELLISON,

                Plaintiff,

v.                                    CIVIL ACTION NO.  2:16-cv-02369

CREDIT ACCEPTANCE CORPORATION,

                Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion to Remand and Request for Reasonable Attorney's Fees [ECF No. 6]. The defendant filed its Response [ECF No. 9] and the plaintiff filed his Reply [ECF No. 10], so the Motion is now ripe for adjudication. The Motion is **GRANTED in part** and **DENIED in part**.

I.

On February 27, 2015, the plaintiff filed his Complaint [ECF No. 1-1] in the Circuit Court of Kanawha County, West Virginia. The plaintiff's allegations center on the defendant's debt collection practices. Along with his Complaint, the plaintiff filed a stipulation limiting the damages he could recover:

> Plaintiff(s) and Attorneys for Plaintiff(s) agree to be bound by the following stipulation: so long as this case remains in West Virginia Circuit Court or an Article III Court, the Plaintiff shall neither seek nor accept an amount greater than $75,000.00 in this case, including any award of attorney's fees, but excluding interest and costs. This stipulation has no application, force, or enforceability in an arbitration forum or other alternative dispute resolution environment except non-binding mediation as part of a court proceeding.

Notice of Removal Ex. 1, at 7 [ECF No. 1-1].

On February 18, 2016—almost one year after filing his Complaint—the plaintiff moved to compel arbitration and stay the proceedings in the Circuit Court of Kanawha County. Notice of Removal Ex. 2, at 1–2 [ECF No. 1-2]. Before the Circuit Court of Kanawha County could rule on this motion, the defendant removed this case to the United States District Court for the Southern District of West Virginia based on diversity jurisdiction.[1]

## II.

The plaintiff asks the court to remand this case to the Circuit Court of Kanawha County because this court lacks jurisdiction. Neither party disputes diversity; both argue that jurisdiction turns on the amount in controversy. The defendant argues the amount in controversy exceeds $75,000 because, although the plaintiff filed a stipulation limiting his damages, the plaintiff tried to compel arbitration—a forum where the stipulation does not apply. The plaintiff asks the court to look to the stipulation—and no further—when determining the amount in controversy.

A party may remove its case to a federal court if the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C.

---

[1] Although the plaintiff does not challenge removal as untimely, the defendant notes removal was appropriate so far into the case because the plaintiff acted in bad faith. Resp. 4; *see also* 28 U.S.C. § 1446(c)(1) ("A case may not be removed . . . on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing an action."). The court does not need to decide whether removal was timely because, in any event, remand is required.

§§ 1332, 1441. The party seeking removal—like the defendant in this case—bears the burden of showing the federal court has jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). If the court is left with doubts concerning whether it has jurisdiction, remand is necessary. *Id.* ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." (citation omitted)).

A single, simple principle provides the foundation for jurisdictional inquiries: "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal jurisdiction extends only as far as the Constitution and statutes permit. *Id.* While Congress has extended this jurisdiction to cases involving diverse parties, it has also limited jurisdiction to cases involving a certain amount of money. Since the Judiciary Act of 1789 was enacted, the required amount has increased more than once. Each increase was enacted with an eye toward decreasing the federal docket by limiting federal jurisdiction.

For example, after World War II, the federal courts experienced a significant uptick in their workload. S. Rep. No. 85-1830, at 2–3 (1958). While other factors contributed to this uptick, depreciation played a role. Since the amount had last been raised to $3000 in 1911, "the value of the dollar in terms of its purchasing power ha[d] undergone marked depreciation." *Id.* at 4. An amount this small was just no longer enough to keep insubstantial matters out of the federal courts. So in 1958, Congress

raised the required amount in controversy to $10,000 to keep federal courts from "fritter[ing] away their time in the trial of petty controversies." *Id.*[2]

More recently, the amount was increased twice for similar reasons. In 1988, Congress increased the required amount from $10,000 to $50,000, providing two justifications for the increase: "First, a potential reduction of caseload. The last time the amount in controversy was revised was in 1958. That upward revision produced at least a short term reduction in the number of diversity cases. Second, the adjustment largely reflects inflation." H.R. Rep. 100-889, at 45 (1988).[3] And in 1996, Congress increased the required amount to $75,000, citing "the need to assist the Federal judiciary in reducing its increasing caseload" and recognizing the need to "provide[ ] claims with substantial amounts at issue access to a Federal forum, if diversity of citizenship among the parties exists." S. Rep. 104-366, at 29–30 (1996).

Consistent with "[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states," federal courts have "rigorously enforced" the amount in controversy requirement. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). But federal courts have avoided

---

[2] Prior to raising the amount in controversy requirement in 1958, "Congress . . . added fifty-one district judges since 1941 in an effort to cope with increasing litigation in federal courts." M. Minnette Massey, *Restrictions on Federal Jurisdiction—The 1958 Amendment to the Judicial Code*, 13 Univ. Miami L. Rev. 63, 63 (1958). But enrobing more federal judges was not enough to "remove[ ] many of the basic factors in [the] problem of increased litigation." S. Rep. No. 85-1830, at 3 (1958).

[3] As the twentieth century crept toward its close, Congress was less inclined to increase the number of federal judges. H.R. Rep. 100-889, at 45 (1988) ("[A]s inflation, the workload of the Federal courts, and the unwillingness of Congress to solve caseload problems by creating new judgeships coalesce[,] pressures are created to review ways to reduce Federal jurisdiction.").

protracted litigation over complex jurisdictional rules. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."); *see also Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) ("Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss."). So the amount in controversy inquiry remains relatively simple—the amount in controversy "is what the plaintiff claims to be entitled to or demands." *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 967 (S.D. W. Va. 2011); *see also St. Paul Mercury*, 303 U.S. at 288 ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls . . . .").

A federal court can easily determine the amount in controversy if an amount is stated in an *ad damnum* clause or an amount has been demanded as a settlement:

> A settlement demand over $75,000 is very like an *ad damnum* clause over that amount and should be treated similarly. Both are statements by plaintiffs as to the amount claimed and are therefore the best measure of the amount in controversy. As Judge Easterbrook has explained, the settlement demand "is close in spirit to the *ad damnum* in a complaint; it makes sense to give it the same legal status."

*Scarlato*, 826 F. Supp. 2d at 967 (quoting *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)). Likewise, a stipulation limiting recovery makes the inquiry quite simple so long as the stipulation meets certain requirements:

> In some cases, a stipulation by the plaintiff is dispositive of the amount in controversy. A stipulation has such an effect when it is "a formal, truly binding, preremoval [sic] stipulation signed by counsel and his

5

client explicitly limiting recovery." In addition, "The stipulation should be filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief."

*Osgood v. BB&T Fin., FSB*, No. 5:12-cv-582, 2012 WL 1458102, at *2 (S.D. W. Va. Apr. 26, 2012) (citation omitted) (quoting *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485–86 (S.D. W. Va. 2001)). But if there is no express statement of the amount in controversy, the inquiry shifts away from simplicity, requiring the court to review the totality of the circumstances and "to estimate what a reasonable plaintiff would demand or claim." *Scaralto*, 826 F. Supp. 2d at 968.

In this case, the plaintiff stipulated that he will not seek more than $75,000 in damages in a document that complies with the relevant requirements. Notice of Removal Ex. 1, at 7. And the plaintiff has maintained this position despite being aware that the damages in this case could exceed $75,000:

> Damages are $100 to $1,000 per violation adjusted for inflation from 1974. Thus damages are $479.92 to $4,799.17. There are 23 calls that violate the act in this case, therefore, damages are 23 x $4,799.17 or $110,380.91. . . . However, this case is capped at $75,000 by stipulation. Therefore, damages are $75,000.

Resp. Ex. 3, at 2 [ECF No. 9-3]; *see also* Reply 1–2 ("Plaintiff has never asked for more than $75,000 . . . ."). So it would appear further inquiry into the amount in controversy is unnecessary.

Nevertheless, the defendant asks the court to ignore the plaintiff's representations and to find the plaintiff has sought damages in excess of $75,000. While the plaintiff has stipulated that his damages in a judicial forum cannot exceed $75,000, the defendant notes, the stipulation does not apply to arbitration. Because

the plaintiff moved to compel arbitration and the plaintiff's damages could exceed $75,000 in this forum where the stipulation is without force—or so the argument goes—the plaintiff has sought damages in excess of $75,000. *See* Resp. 5. So in the defendant's view, the court should review the totality of the circumstances and tie jurisdiction to the plaintiff's statements about the potential statutory relief attainable in an arbitral forum instead of the plaintiff's self-imposed, binding limit on recovery in a judicial forum.

The past provides prologue. Congress has raised the amount in controversy requirement to reduce the cases coming to federal courts; the federal courts have rigorously enforced this requirement consistent with the intent of Congress. And when inquiring into whether the amount in controversy is met, federal courts prefer Alexandrian solutions to knotty jurisdictional tests. *E.g.*, *Hertz Corp.*, 559 U.S. at 94–95. The past counsels against adopting the defendant's tangled analysis. It demands simplicity.

The amount in controversy turns on the amount the plaintiff seeks to recover, not hypothetical amounts that may be awarded in another forum if a party avails itself of that forum. The plaintiff has stipulated that he cannot recover more than $75,000 in a judicial forum. Whether a stipulation of this sort can be used to defeat diversity is beyond dispute. *Bailey v. SLM Corp.*, No. 5:11-cv-715, 2012 WL 1598059, at *5 (S.D. W. Va. May 7, 2012).

Whether the plaintiff could obtain more in another forum does not matter. The court is concerned with the amount in controversy in the controversy before it, not

7

the amount in controversy the plaintiff could possibly pursue elsewhere. When a plaintiff demands a sum certain—whether by complaint, stipulation, settlement demand, or the like—the court rarely needs to look any further to determine the amount in controversy. *C.f., e.g., Osgood*, 2012 WL 1458102, at *2 (requiring a properly executed stipulation). This case is no rarity. The stipulation is nothing more than a road sign directing judicial traffic to another forum. Accordingly, the court concludes this case should be remanded to the Circuit Court of Kanawha County.

### III.

The plaintiff also seeks to recover attorney's fees. But the plaintiff provides little explanation about why he is entitled to recover attorney's fees. So the court is without much guidance on this issue.

When remanding a case, a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Section § 1447(c) does not automatically entitle a party to attorney's fees; instead, the statute "clearly indicates that a district court has discretion in awarding attorney fees on remand." *Deluca v. Ocwen Loan Serv., LLC*, No. 5:10-cv-421, 2011 WL 805862, at *3 (S.D. W. Va. Mar. 2, 2011). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

At best, the plaintiff simply claims he is entitled to recovery attorney's fees because "the Defendant is forum shopping." Reply 3. This unadorned assertion does

8

not establish the defendant "lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. Nor does it present unusual circumstances. The plaintiff simply ignores whether the defendant's argument has any merit, which should be the focus of an attempt to recover attorney's fees under § 1447(c).

Because the plaintiff does not provide a sufficient explanation about why he should recovery attorney's fees, the court denies the plaintiff's request.

IV.

The plaintiff's Motion to Remand and Request for Reasonable Attorney's Fees [ECF No. 6] is **GRANTED in part** and **DENIED in part**. Specifically, the court **GRANTS** the plaintiff's request to remand this case and **DENIES** the plaintiff's request for attorney's fees.

The court **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party and to send a certified copy of this Memorandum Opinion and Order to the Clerk of the Circuit Court of Kanawha County, West Virginia.

The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: April 14, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

9